## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2:22-cr-20254-JPM-1 |
| v. ) | |
| ) | |
| JULIUS COLLINS, ) | |
| ) | |
| Defendant. ) | |

## ORDER ON CROSS-REFERENCE FOR ATTEMPTED CARJACKING

The instant Case is before the Court for Sentencing. After the entry of a plea agreement, a factual dispute emerged between the written Pre-Sentence Report ("PSR") and the Defendant, Julius Collins ("Defendant" or "Mr. Collins"). After a hearing regarding this dispute on October 20, 2023 and a Supplemental Brief by the Defendant on the Presentence Report, the Court writes to resolve the factual and legal disputes put forward by Defendant. Defendant argues that, because the Government stated in briefs external to the written plea agreement that it "cannot meet the burden of establishing attempted carjacking, and the parties considered this fact in crafting the Plea Agreement[,]" and because the government agreed to recommend no cross-reference be denied, the Pre-Sentencing Reports' recommendation that the carjacking enhancement be applied should be rejected. (ECF No. 48.) For the reasons discussed below, and given the evidence before us, the Court disagrees.

1. **BACKGROUND**

On June 8, 2023, Defendant Julius Collins ("Defendant" or "Mr. Collins") pled guilty to being a felon in possession of a firearm. (ECF Nos. 26-27.) Pursuant to the agreement, Plaintiff the United States ("the Government") "agrees to recommend" that, *inter alia*, "the defendant be sentenced under the United States Sentencing Guidelines § 2K2.1, and that no cross-reference be applied" and that the defendant be sentenced at the low-end of the guideline range with full credit for acceptance of responsibility. (ECF No. 27 at PageID 66.) "Parties agree that the enhancement for possessing firearms in connection with another felony offense under § 2K2.1(b)(6)(B) DOES apply." (Id.) The plea agreement contained an integration clause specifying that the Plea Agreement constituted the entire agreement between parties. The plea agreement as submitted to the court does not mention further production of evidence or witnesses, and does not mention the carjacking enhancement. (ECF No. 27.)

Defendant appeared before the Court on June 8, 2023, for a Change of Plea hearing. (ECF No. 26.) At this hearing, the Plea Agreement was read in full, and Defendant confirmed that there were no side deals or other agreements between Defendant and the Government. Defendant confirmed that his Attorney had ensured he understood the agreement. Defendant confirmed that he understood the recommendations in the agreement are just recommendations, and that they are not binding on the Court. Defendant confirmed that he understood that the probation officer writing the presentence report could carry out additional investigation that could change sentencing estimates made by the attorneys. According to the Draft Transcript of the Change of Plea hearing, Defendant stated the following:

> I jumped out the window, and my firearm was on my right side. It wasn't showing. It was in my boxers through my waistband . . . As I was running . . . my gun slipped through my pants, it hit the ground, I looked down at it, the officer yelled "Don't you pick it up motherf***er," and I grabbed the car door of a pedestrian at the red light. I grabbed the rear

> end passenger side. I was going to pay somebody to drop me off because I thought I had lost or whatever. And that didn't work out, so I ran up the hill . . . I attempted to do it again. I attempted to do it again, and there was another worker, I opened his door and asked him to drop me off . . . That didn't work out. I opened another door. It was an empty, and it had the keys in it.

(Draft Plea Transcript at Page 59-60.)

On October 22, 2023, the probation officer filed a draft PSR. (ECF No. 31.) Paragraph 6 of the draft PSR states:

> Collins approached a small black sedan that was stopped in traffic [and] [s]tanding next to the vehicle[,] . . . extended his arm toward the passenger side window and brandished a firearm at the motorist. Officers notified to dispatcher that Collins was attempting to carjack a motorist and yelled verbal commands to Collins, "Don't you do it!" . . . As Collins turned from the vehicle and continued to flee from the officers, he dropped his handgun on the ground several yards away from the attempted carjacking. When Collins attempted to retrieve the gun, officers gave verbal commands to Collins instructing him to not reach for the handgun on the ground.

(ECF No. 31 at PageID 74 ¶ 6.) The probation office recommended specific offense characteristics for firearm otherwise used (USSG § 2B3.1(b)(2)(B)) and for an offense involving carjacking (USSG § 2B3.1(b)(5)). (ECF No. 31 at PageID 77 ¶¶ 16-17.) The probation officer also recommended an adjustment for obstruction of justice. The probation officer ultimately recommended a sentence of 120 months imprisonment and a three-year term of supervised release. (ECF No. 31-1 at PageID 100.) In response to the draft pre-sentence report, the Government filed a position stating that it "has no objections to the factual information contained in the Presentence Report[,]" and that "[p]ursuant to the plea agreement, the United States will not be pursuing the cross-reference to attempted carjacking as calculated in ¶¶ 15-25 of the Presentence Report [and] will assert that the appropriate guidelines are those calculated in ¶¶ 86-96." (ECF No. 33 at PageID 105.) The Government therefore recommended a sentence of 46 months imprisonment. (Id. at PageID 106.) Defendant objected to the factual allegations "that Mr. Collins brandished a firearm to a motorist and attempted to carjack them"

arguing that "the video referenced by the PSR writer is not clear and does not show a firearm being pointed or pulled" and no witness was interviewed regarding Mr. Collins' statements to the driver of the black sedan. (ECF No. 32 at PageID 103.) Defendant also objects to the allegation that he tried to drag the driver of the second vehicle out of the car. (Id.) Given the dispute between Defendant's position and the PSR, the Court ordered the Government to produce the body-worn camera footage of the incident, the report narrative referenced in the PSR, and the Officer who wrote said report. (ECF No. 38.)

Officer Benjamin Huff's report narrative—which is consistent with the draft PSR and the bodycam footage—describes the sequence of events differently from Mr. Collins' plea colloquy. Officer Huff's report states that "while suspect Julius Collins was running up the on ramp of Holmes [R]oad officers observed [him] attempt to take a small black sedan at gun point and while attempting to take the vehicle the suspect dropped his gun, and that is when the vehicle sped away." (ECF No. 42 Ex. 2.) It goes on to state that:

> Officer yelled at the suspect to not reach for the handgun on the ground and suspect continued to run eastbound . . . Officer retrieved the handgun and continued to pursue. . . [then] observed suspect Julius Collins attempt to pull victim David Trimm out of his Ford Ranger. Victim David Trim advised that suspect Julius Collins attempted to drag him out of his vehicle yelling at him to get out, get out, the police are after me and that he refused to get out of the vehicle.

(Id.) The report then describes Mr. Collins running to an unoccupied Chevrolet Silverado, where he was taken "to the ground" by officers and then into custody "without incident." (Id.) The report was written at the scene, before review of body-worn camera footage. (ECF No. 49 at PageID 198.)

The body camera footage shows that after running up the left side of the shoulder on Holmes Road, the figure identified as Mr. Collins sharply cuts across the shoulder just after passing an eighteen-wheeler. (ECF No. 42 Ex. 1, 3.) The eighteen-wheeler and a black sedan immediately

4

behind it are stopped in traffic. Mr. Collins cuts across the shoulder, running towards the the black sedan. Mr. Collins turns towards the vehicle, extending his right hand and lifting his left arm so that his hand is at hip level. Mr. Collins' right arm remains extended towards the vehicle for several seconds before he is within reach of the vehicles' handle, and in several frames it appears that he either has an item in his right hand or that his right hand is pointing at something. Mr. Collins then reaches the vehicle and appears to pull on the handle, before turning and running as the officer approaches. After running from the vehicle, and the car pulls forward, the suspect returns to the left side of the shoulder and a small black object appears on the shoulder. The suspect then turns left and runs up an embankment. The officer approaches the object, indicates that he is picking up a firearm, and the video shows the officer pick up a black firearm from the shoulder of the roadway. (Id.)

At the Hearing, Officer Huff testified largely consistently with his report narrative. He stated that after observing Defendant's car (a Cadillac) traveling at "over a hundred-plus-miles an hour," he and his partner gave chase. (ECF No. 49 at PageID 187.) They discontinued the pursuit, but then spotted the same Cadillac stopped in traffic near the intersection of Lamar and Holmes. The driver—the Defendant—apparently seeing the police car, exited his vehicle and a foot chase began. (Id. at PageID 188-89.) Officer Huff testified that:

> During the foot chase . . . [w]e went up the exit ramp, and at that time, I saw Mr. Collins at the time when we were approaching – he approached a car and was pulling on a car door handle. And when he was pulling on the car door handle, he was trying to produce a weapon. But then he – I think he saw me, and he took off. And then he dropped the weapon on the ground. And then he kept running. And I screamed some commands at him. He stopped, looked, and kept running. And at that time, I holstered my weapon, and I picked up his weapon off the ground.

(Id. at PageID 189.) During the foot chase, Officer Huff was twenty to thirty feet away from Mr. Collins. (Id. at PageID 190.) On review of the body-worn camera footage during

5

testimony, Officer Huff stated that while he was not able to see a weapon as Mr. Collins was approaching the vehicle and beginning to try the door handle, Mr. Collins had his gun in his hand as he ran away from the vehicle. (Id. at PageID 193.) Officer Huff also stated that when Defendant was pulling on the handle of the car door, "he was reaching inside his waistband or hoody. . ." (Id. at PageID 196.)

Officer Huff also testified to Defendants' alleged actions at the construction site. Officer Huff testified that "Mr. Collins attempted to take a construction worker out of a truck [and] [t]he construction worker advised he fought back, fought Mr. Collins off." (Id.) Officer Huff indicated that at the point in the body-worn camera footage where "He's trying to steal a truck" is heard, he could see to his left that "[Mr. Collins] was attempting to take the man out of the truck at the construction site." (Id. at PageID 194.)

2. **FACTUAL FINDINGS**

At sentencing, the Court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary . . . because the matter will not affect sentencing. . . " FED. R. CRIM. P. 32(i)(3)(B). "When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an opportunity to present information to the court regarding that factor. . . . [T]he court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." USSG § 6A1. "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. . ." United States v. Booker, 543 U.S. 220, 244 (2005). Courts do not err

in finding facts not contained in the plea agreement to determine a sentence when that sentence is less than the statutory maximum for any of the crimes committed. United States v. Conner, 276 F. App'x 443, 449 (6th Cir. 2008). The charge to which Mr. Collins pled guilty carries a maximum statutory punishment of imprisonment for not more than 10 years, not more than $250,000 fine, or both, a period of supervised release for not more than 3 years, and a mandatory special enhancement of $100, unless the defendant has three prior convictions for violent felonies or serious drug offenses. Here, the dispute over the facts regarding Mr. Collins' approach and attempts to take the black sedan are determinative of sentencing enhancements applicable in this case.

Not all of the facts are in dispute. The Parties agree that Mr. Collins had a loaded firearm on him at the time he began running. The firearm was tucked into Mr. Collins' waistband when he began fleeing. Mr. Collins fled from police along the shoulder of a highway, and then approached a black sedan stopped in traffic and pulled on the passenger-side handle. (ECF No. 48 at PageID 164-65.) Officer Huff failed to hear any conversation between Mr. Collins and the driver of the black sedan, but Mr. Collins stated in his plea colloquy that he planned to tell the driver he would give him money to assist him in fleeing.

The facts in dispute are whether Mr. Collins had the gun at the time he pulled on the passenger-side door, whether he brandished his weapon at the driver of the black sedan, and whether he made a statement to the driver of the black sedan. The driver of the black sedan left the scene after Mr. Collins approached the vehicle and is not available to testify.

While Defendant claims that the gun fell from his waistband while he was running and before he reached the black sedan, the bodycam footage demonstrates otherwise. The footage of the recovery of the firearm shows it was picked up from the shoulder, which is tan in color.

7

None of the footage, either in context or when isolated frame-by-frame, shows an object which could be a firearm on the shoulder prior to Mr. Collins approaching the sedan. It appears that the item suddenly seen on the shoulder as Mr. Collins turns left up the embankment is a firearm. For this to be true, the firearm must have been dropped after Mr. Collins' approached the black sedan, consistent with the statement made by Officer Huff. The Court therefore finds that Mr. Collins had the gun at the time he approached the black sedan.

The combination of Officer Huffs' narrative report stating that Mr. Collins attempted to take the sedan "at gunpoint" and the body camera footage confirms that Mr. Collins more likely than not displayed his weapon to the driver of the black sedan as or immediately after he pulled on the passenger-side doors. The footage shows Mr. Collins reaching the vehicle, appears to show him brandishing the firearm with his right hand, and then shows him pulling on the doors of the vehicle before turning and running as the police approach. Therefore, the Court finds that it is more likely than not that Mr. Collins brandished the firearm at the driver of the vehicle as or before he attempted to enter the car.

3. **LEGAL STANDARD AND ANALYSIS**

   a. *The Governments' Conduct Post-Plea Agreement*

Plea agreement language can be either binding or non-binding. FED. R. CRIM. P. 11(c)(1). Plea agreements:

> [M]ay specify that an attorney for the government will:
> (A) not bring, or will move to dismiss other charges;
> (B) *recommend* . . . that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation does not bind the court); or
> (C) *agree* that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

FED. R. CRIM. P. 11(c)(1).  The plea agreement at issue here clearly falls under Fed. R. Crim. P. 11(c)(1)(B), given that it uses the term "recommend" referring to the sentence or sentencing ranges the parties have agreed are appropriate.  (ECF No. 27 at PageID 66.)  This is not imprecision: Parties use the mandatory language from 11(c)(1)(C) to "agree" (without the "recommend" hedge) that § 2K2.1(b)(6)(B) applies. (Id.)  "To the extent the plea agreement is of the type specified in Rule 11(c)(1)(B), the court must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request." FED. R. CRIM. P. 11(c)(3).  The Court did so at the change of plea hearing on June 8, 2023. (Draft Transcript at Page 48, 54-55.)

The Court does not speculate as to the reasons that the Government and Defense entered into the agreement that they did.  The agreements' specific use of language and of a merger clause, however, makes clear that the parties' decision to differentiate between binding agreements and non-binding recommendations was intentional.  Mr. Collins confirmed at the Change of Plea hearing that he understood the plea agreement and its implications, that he was entering into it voluntarily, that no side agreements existed, and that the recommendation was non-binding.  Defendant now attempts to use the recommendation language in the plea agreement to bar resolution of fact questions by the Court, according to the evidence before it and the recommendation of the Probation Officer.

Defendant's legal objection to the PSR, and position on the cross-reference for attempted carjacking, is that "the government agreed that the applicable guideline in this case is USSG § 2K2.1, and that no cross-reference would be applied."  (ECF No. 48 at PageID 160.)  Defendant also cites the Government's post-plea conduct in stating that "the government cannot meet the burden of establishing attempted carjacking, and the parties considered this fact in crafting the

9

Plea Agreement." (Id.) Defendants' statements, however, misconstrue the text of the plea agreement—the Government "agrees to recommend" no cross-reference be applied. While the distinction transforms the agreement from the binding one Defendant seeks to enforce into a recommendation to the Court. (Id.) Any side-agreements between parties were disclaimed by the merger clause and by Defendants' plea colloquy. The government stated in hearing and made clear in its report that it does not recommend the enhancement, thus abiding by the terms of the plea agreement. As the Sixth Circuit emphasizes, "a trial judge cannot possibly administer a plea agreement[] if it consists of 'secret terms known only to the parties.'" Bates v. Makie, 2017 WL 3120469 at *5 (W.D. Mich. June 20, 2017) (citing Baker v. United States, 781 F.2d 85, 90 (6th Cir. 1986)). The Court therefore cannot enforce the terms of a binding 11(c)(1)(C) plea agreement where parties have negotiated and chosen 11(c)(1)(B) language.

      b. *Application of the Sentencing Enhancement*

Application of a sentencing enhancement for carjacking in this case requires that the government prove 1) the defendant had intent to commit carjacking; and 2) the defendant committed an overt act that constitutes a "substantial step" toward commission of the crime. United States v. Wesley, 417 F.3d 612, 618 (6th Cir. 2005) (citing United States v. Bilderbeck, 163 F.3d 971, 975 (6th Cir. 1999)). The overt act must mark the conduct as criminal in nature and corroborate the required subjective intent to engage in criminal conduct. Bilderbeck, 163 F.3d at 975. Defendant argues that Mr. Collins' "words and actions did not sufficiently demonstrate an intent to harm or kill anyone in order to effect a carjacking or otherwise." (ECF No. 48 at PageID 164.)

To demonstrate the requisite intent for a carjacking enhancement, it must be shown by a preponderance of the evidence that "at the moment the defendant demanded or took control

over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car (or, alternatively, if unnecessary to steal the car)." Holloway v. United States, 526 U.S. 1, 3 (1999).  To find this "conditional intent," lower courts must examine "the totality of the circumstances to evaluate whether the defendants' words and actions sufficiently demonstrated such an intent." United States v. Fekete, 535 F.3d 471, 478 (6th Cir. 2008).  "[I]n the absence of a physical touching or direct proof that the firearm was loaded," brandishing alone is insufficient to establish the specific intent element.  Id. at 480.  However, "brandishing-plus" additional evidence can satisfy the specific intent element "in the form of circumstantial evidence that the firearm was loaded or other evidence related to the defendant's acts or statements. . ." Id. at 480-81.  Pointing a loaded gun at a vehicle's occupant while making a demand is sufficient to indicate specific intent.  Id.

The Court finds, based on the evidence before it and in accordance with the findings of the probation officer in the PSR, that Mr. Collins had a gun on him at the time he approached the black sedan.  Neither party disputes that the gun was loaded.  The Court finds that it is more likely than not that Mr. Collins brandished his firearm at the driver of the black sedan before or while he pulled on the passenger door.  Mr. Collins averred in his plea colloquy that he planned to offer the driver payment to take him away from the police pursuit.  Given these facts, the Court finds that it is more likely than not that Mr. Collins pointed the loaded gun at the occupant of a vehicle he was attempting to commandeer.  This brandishing marks an objective act, criminal in nature, that corroborates Mr. Collins' likely criminal intent to take the car by force, and to injure the driver of the car if necessary to do so.  As such, it is more likely than not that the sentencing enhancement for attempted carjacking applies in the instant Case.

**SO ORDERED**, this 15th day of November, 2023.

       /s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE